UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JERONE MCDOUGALD,
    Plaintiff,

vs.

SGT. MICHAEL DILLOW, et al.,
    Defendants.

Case No. 1:17-cv-196
Barrett, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff, an inmate at the Southern Ohio Correctional Facility ("SOCF") proceeding pro

se, brings this prisoner civil rights action under 42 U.S.C. § 1983 alleging that prison officials

violated his First Amendment rights by engaging in a retaliatory cell search. This matter is

before the Court on plaintiff's motion for summary judgment (Doc. 27), defendants' motion for

summary judgment and response in opposition to plaintiff's motion for summary judgment (Doc.

32), plaintiff's response in opposition to defendants' motion for summary judgment (Doc. 35),

and defendants' reply memorandum. (Doc. 37). This matter is also before the Court on

plaintiff's motion for leave to supplement and/or amend his complaint. (Doc. 36).

### I. Motion for Leave to Supplement/Amend (Doc. 36)

Plaintiff moves to amend his complaint to add penalty of perjury language pursuant to 28

U.S.C. § 1746 so "the facts in his complaint could be properly in front of this Court" for the

purposes of the pending motions for summary judgment. (Doc. 36 at 2).

The Federal Rules provide that the Court "should freely give leave [to amend] when

justice so requires." Fed. R. Civ. P. 15(a). "A district court has discretion in determining

whether justice requires that [an] amendment be allowed." *Greenberg v. Life Ins. Co. of

Virginia*, 177 F.3d 507, 522 (6th Cir. 1999) (citing *Moore v. City of Paducah*, 790 F.2d 557, 559

(6th Cir. 1986)). For good cause shown, plaintiff's motion (Doc. 36) is **GRANTED**.

Accordingly, plaintiff's verified amended complaint constitutes evidence in support of his own motion for summary judgment and in opposition to defendants' motion for summary judgment. "A verified complaint . . . satisfies the burden of the nonmovant to respond" to a motion for summary judgment, unlike "mere allegations or denials" in unverified pleadings. *Thaddeus-X v. Blatter*, 175 F.3d 378, 385 (6th Cir. 1999) (en banc); *see also El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) (a "verified complaint . . . carries the same weight as would an affidavit for purposes of summary judgment").

## II. Summary Judgment Standard

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A grant of summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Satterfield v. Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Satterfield*, 295 F.3d at 615; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Little Caesar Enters., Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249. The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the

evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587. "In response to a properly supported summary judgment motion, the non-moving party 'is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *Maston v. Montgomery Cty. Jail Med. Staff Pers.*, 832 F. Supp.2d 846, 849 (S.D. Ohio 2011) (quoting *Sixty Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)).

Because plaintiff is a pro se litigant, his filings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that the Court holds pleadings of pro se litigants to less stringent standards than formal pleadings drafted by lawyers)); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) (pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings). However, a party's status as a pro se litigant does not alter his duty to support his factual assertions with admissible evidence. *Maston*, 832 F. Supp.2d at 851-52 (citing *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010)). When opposing a motion for summary judgment, a pro se party cannot rely on allegations or denials in unsworn filings. *Id.* (citing *Viergutz*, 375 F. App'x at 485).

## III. First Amendment Retaliation

### A. Facts

Plaintiff states in his verified complaint that on September 3, 2015 between 8:00 A.M. and 8:30 A.M. he was laying in bed when defendant Dillow approached his cell in the J-2

housing unit. (Complaint, Doc. 3 at 3). Plaintiff alleges that defendant Dillow stated: "I should pepper spray you bitch for filing a [sic] informal complaint on me and my coworkers." (*Id.*). Plaintiff states that defendant Dillow walked down the cell block and eventually returned to his cell and continued to insult him, stating "if he ever saw [plaintiff] outside of prison he would blow [plaintiff's] brains out." (*Id.*). Plaintiff alleges that defendant Dillow then aimed a can of pepper spray at him and directed defendant Clere to place plaintiff in handcuffs. (*Id.*). Plaintiff claims that defendants then conducted a search of his cell and placed his sheets and blankets in the toilet. (*Id.*). Plaintiff attaches relevant grievance documents related to the September 3, 2015 cell search to his complaint. (Doc. 3-1).

Defendants do not dispute that defendants Dillow and Clere searched plaintiff's cell on the morning of September 3, 2015. (Declaration of Sgt. Michael Dillow, Doc. 32-7 at ¶ 13). Defendants maintain that plaintiff's cell was searched pursuant to an Ohio Department of Rehabilitation and Correction ("ODRC") policy, either as one of three required cell searches a day, or as part of a random shake down. (*Id.*). During the search, defendant Clere handcuffed plaintiff and stood outside the cell while defendant Dillow conducted the search. (Dillow Declaration at ¶¶ 15-16; Declaration of Ron Clere, Doc. 32-8 at ¶ 10). Defendant Dillow did not threaten plaintiff, reference any of plaintiff's past grievances, or point pepper spray at plaintiff. (Dillow Declaration at ¶¶ 14, 22; Clere Declaration at ¶¶ 13-14). Defendants maintain that they did not place plaintiff's property in the toilet or destroy it in any manner. (Dillow Declaration at ¶ 18; Clere Declaration at ¶ 11).

Linnea Mahlman, Institutional Inspector at SOCF, investigated plaintiff's complaint that he was retaliated against by defendants Dillow and Clere. (Declaration of Linnea Mahlman, Doc. 32-1 at ¶ 5). During the course of her investigation, she reviewed DVR footage from the

4

alleged incident on September 3, 2015. (*Id.* at ¶ 7). Ms. Mahlman attests that the footage did not show defendant Dillow pointing mace at plaintiff or tampering with plaintiff's property. (*Id.* at ¶¶ 10-11). Rather, the footage showed a nonchalant situation and a routine cell search, where plaintiff appeared laid back. (*Id.* at ¶ 12). Ms. Mahlman also found that plaintiff did not address any issues or concerns with the cell search to any of the four supervisors who walked past his cell later that morning. (*Id.* at ¶¶ 13-14).

### B. Legal Standard

A prisoner's claim of retaliation for engaging in protected conduct is grounded in the First Amendment. *Jones v. Caruso*, 421 F. App'x 550, 553 (6th Cir. 2011) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999) (en banc)). A retaliation claim has three elements: (1) the prisoner engaged in protected conduct; (2) an adverse action was taken against the prisoner that "'would deter a [prisoner] of ordinary firmness from continuing to engage in that conduct'"; and (3) the prisoner's protected conduct motivated the adverse action, at least in part. *Id.* (quoting *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (in turn quoting *Thaddeus-X*, 175 F.3d at 394)).

### C. Resolution

Plaintiff argues that summary judgment should be granted in his favor. Plaintiff generally reiterates the same allegations from his verified complaint and argues that defendants conducted an improper cell search. (Doc. 27 at 2). Plaintiff argues that he has a "history of filing misbehavior reports" and grievances against defendant Dillow and other prison officials, which substantiates his First Amendment claim that defendants Dillow and Clere conducted a retaliatory cell search. (*Id.*). As evidence in support of his motion for summary judgment, plaintiff attaches grievance documents from an incident on March 26, 2015 involving defendant

Dillow and Correctional Officer Lute, who is not a party to this lawsuit. (Doc. 27-1 at 1-5). In the grievance, plaintiff alleged that Correctional Officer Lute denied him a shower and recreation on March 26, 2015 and then threatened to write plaintiff up and escort plaintiff to defendant Dillow's office so that defendant Dillow and Correctional Officer Lute could beat plaintiff up. (*Id.*).

Defendants oppose plaintiff's motion for summary judgment and move for summary judgment in their favor on plaintiff's First Amendment retaliation claim. First, defendants argue that plaintiff has failed to establish that he was engaged in protected conduct under the First Amendment. (Doc. 32 at 8). Second, defendants argue that plaintiff has failed to establish that he suffered any adverse action because cell searches are a routine part of prison life. (*Id.* at 14). Third, defendants argue that plaintiff has failed to establish a causal connection between his protected conduct and the adverse action due to the lack of temporal proximity between the filing of his informal complaint and the cell search, as well as the fact that defendant Dillow was "merely an ancillary party to [p]laintiff's prior informal complaint." (*Id.*). Defendants also argue that even assuming plaintiff's prior informal complaint from March 26, 2015 was a motivating factor behind the cell search, they are entitled to summary judgment because they would have taken the same action in the absence of the protected activity. (*Id.* at 17). Defendants also contend that they are entitled to qualified immunity. (*Id.* at 18). In support of their motion for summary judgment, defendants attach declarations from Linnea Mahlman, defendant Michael Dillow, and defendant Ron Clere, as well as grievance documents from the September 3, 2015 incident at issue, and the same grievance documents from March 26, 2015 that forms the basis of plaintiff's retaliation claim. (Doc. 34).

## 1. Protected Conduct

Defendants argue that plaintiff has failed to establish the first element of a retaliation claim—that he was engaged in protected conduct under the First Amendment. (Doc. 34 at 8). Defendants argue that plaintiff's grievance involving defendant Dillow on March 26, 2015 was frivolous and therefore does not constitute evidence that plaintiff was engaged in protected activity. (*Id.* at 11). Defendants explain that plaintiff's March 26, 2015 grievance was investigated and eventually denied as being without merit. (*Id.* at 9-10).[1]

In response, plaintiff argues that his grievance was not denied by prison officials as frivolous. (Doc. 35 at 2).

Inmates have an undisputed First Amendment right to file grievances against prison officials on their own behalf. *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). This right, however, is not absolute. The right to file grievances is protected "only if the grievances are not frivolous." *Id.* "Abusive or manipulative use of a grievance system would not be protected conduct." *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012) (citing *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010)). *See also Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018). Courts in the Sixth Circuit have suggested that a prisoner's underlying grievance is frivolous when it is *de minimus*. *Maben*, 887 F.3d at 264.

---

[1] Defendants have submitted evidence that there are only two other informal complaints from before the September 3, 2015 cell search mentioning defendant Dillow. (Mahlman Declaration at ¶ 16). In addition to the March 26, 2015 grievance, another grievance was submitted *to* defendant Dillow on February 24, 2015, but its contents concern *another officer*. (*Id.*; Doc. 32-3). Plaintiff submitted another grievance concerning defendant Dillow on March 27, 2015, where plaintiff alleged that defendant Dillow came into his shower and made verbal physical threats to him. (Doc. 32-5). Plaintiff did not submit any grievances before September 3, 2015 that mentioned defendant Clere. (Mahlman Declaration at ¶ 16). In his motion for summary judgment and opposition thereto, plaintiff has only submitted the March 26, 2015 grievance as evidence that he engaged in protected conduct and has failed to submit evidence of any other prior grievances involving defendants Dillow and Clere. (Doc. 27-1). Moreover, plaintiff cannot establish First Amendment retaliation by merely alleging that defendants' retaliatory conduct was the result of unspecified grievances and his grievance history in general. *See Reyes v. Palmer*, No. 1:17-cv-755, 2017 WL 5166705, at *6 (W.D. Mich. Nov. 8, 2017). As such, the Court will solely consider the March 26, 2015 grievance in connection with plaintiff's First Amendment retaliation claim.

In this case, the underlying informal complaint and grievance involved a situation on March 26, 2015 where plaintiff was allegedly denied recreation and a shower and threatened by Correctional Officer Lute. (Docs. 27-1; 32-4). Correctional Officer Lute allegedly threatened to physically assault plaintiff in defendant Dillow's office. (*Id.*). The disposition of grievance that both parties have submitted indicates that plaintiff's grievance was denied on April 29, 2015. (Doc. 27-1 at 3; Doc. 32-4 at 4). On appeal to the Chief Inspector at SOCF, the decision was affirmed. (Doc. 32-4 at 6).

Construing the evidence in the light most favorable to plaintiff, plaintiff has established that he was engaged in protected activity under the First Amendment. The Court cannot say that plaintiff's March 26, 2015 grievance, which partly concerns alleged threats to his physical safety, was necessarily frivolous or *de minimus*. *See Wade-Bey v. Fluery*, No. 2:07-cv-117, 2008 WL 2714450, at *6 (W.D. Mich. July 8, 2008) (holding that inmate's letter to warden expressing fear for his physical safety, which the Court equated to a grievance, was not frivolous and was protected conduct under the First Amendment). Defendants attempt to argue that plaintiff's grievance was "frivolous" because it was dismissed by prison administrative officials; however, defendants have failed to point the Court to any authority in support of their argument that only a meritorious grievance as determined by prison officials establishes protected conduct under the First Amendment.[2] Defendants also argue that defendants Dillow and Clere were not directly implicated in the March 26, 2015 grievance. While this appears to be accurate, construing the evidence in the light most favorable to plaintiff, the Court finds that plaintiff was engaged in

---

[2] As explained by the Eastern District of Michigan, the Sixth Circuit's definition of "frivolous" in *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) is arguably open to question. *Ziegler v. Doe*, No. 01-10377-BC, 2003 WL 21369254, at *3 (E.D. Mich. June 11, 2003). The Court noted that in a subsequent case, *Bell v. Johnson*, 308 F.3d 594, 607 n. 5 (6th Cir. 2002), a Sixth Circuit panel found that "the mere fact that a claim lacked ultimate merit does not render its making unprotected for the purposes of a First Amendment retaliation claim." *Id.*

protected conduct under the First Amendment. Accordingly, plaintiff has satisfied the first element of his First Amendment retaliation claim.

## 2. Adverse Action and Causal Connection

Next, defendants argue that plaintiff fails to establish the second element of a First Amendment retaliation claim—that defendants took an adverse action against plaintiff. (Doc. 32 at 11-14). Defendants argue that "inconsequential" claimed retaliatory actions may be properly dismissed before trial. (*Id.* at 11) (citing *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002)). Defendants maintain that a simple, routine cell search is an "inconsequential" alleged retaliatory action that fails to support a showing of adverse action. (*Id.*).

An "adverse action is one that would 'deter a person of ordinary firmness' from the exercise of the right at sake." *Thaddeux-X*, 175 F.3d at 396. "Whether a retaliatory action is sufficiently severe to deter a person of ordinary firmness from exercising his or her rights is a question of fact." *Bell*, 308 F.3d at 603. However, "some actions are so *de minimus* that they do not rise to the level of a constitutionally cognizable injury." *Maben*, 887 F.3d at 266 (citing *Thaddeus-X*, 175 F.3d at 396). Examples of adverse actions sufficient to meet the "person of ordinary firmness" standard include a retaliatory transfer to another prison, threatening to impose disciplinary sanctions, issuing major misconduct reports, and threatening the use of physical force. *Reynolds-Bey v. Harris*, 428 F. App'x 493, 503 (6th Cir. 2011). A retaliatory cell search and seizure of an inmate's legal documents are also adverse actions. *Bell*, 308 F.3d at 604-05. However, "prisoners are expected to endure more than the average citizen." *Reynolds-Bey*, 428 F. App'x at 503 (quoting *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005)). Thus, routine inconveniences such as "the single search of a prison cubicle would not deter a person of 'ordinary firmness' from pursuing constitutional grievances." *Id.* (quoting *Tate v. Campbell*, 85

9

F. App'x 413, 417 (6th Cir. 2004)).

A single cell search, unaccompanied by excessive use of force, verbal threats, or other factors, does not meet the adverse action standard. *Id.* at 503-04. Here, however, plaintiff has established more than a single cell search. Defendants maintain that defendants Dillow and Clere conducted a routine cell search pursuant to ODRC policy. (Mahlman Declaration at ¶¶ 9, 12; Dillow Declaration at ¶¶ 18, 20; Clere Declaration at ¶¶ 11, 13-14). However, plaintiff has created a genuine issue of material fact in this regard. The allegations in plaintiff's verified complaint indicate that defendants used threats of physical violence and placed his blankets and sheets in the toilet while conducting the cell search. (Complaint at 3). Construing the evidence in the light most favorable to plaintiff, these acts, in conjunction with the cell search, could rise to the level of adverse action and deter a prisoner of "ordinary firmness" from continuing to file grievances. *See Bell*, 308 F.3d at 606-07 (cell search and confiscation of legal papers and medical snacks was sufficient to establish adverse action); *Reynolds-Bey*, 428 F. App'x at 503-04 (shakedown, accompanied by a racial slur and thinly-veiled threat, met the adverse action standard); *Alexander v. Huss*, No. 2:16-cv-209, 2018 WL 3203607, at *3 (W.D. Mich. May 29, 2018) (cell search and damaged property and legal materials, in addition to other alleged retaliatory acts, could rise to the level of adverse action); *Alexander v. Makela*, No. 2:16-cv-49, 2017 WL 6887037, at *3 (W.D. Mich. Oct. 18, 2017), *adopted*, 2018 WL 354534 (W.D. Mich. Jan. 9, 2018) ("In the opinion of the undersigned, a reasonable jury could conclude that the cell search accompanied by a verbal threat, a strip search, and the destruction/confiscation of property are more than *de minimis* acts and capable of deterring person of ordinary firmness"). Accordingly, the Court finds that plaintiff has presented evidence creating a genuine issue of fact as to whether defendants took an adverse action against him.

Plaintiff, however, has failed to establish that the cell search was motivated in part by the protected conduct. Defendants argue that plaintiff cannot demonstrate a causal connection between the protected conduct and the adverse action. (Doc. 32 at 14). Defendants argue that a lack of temporal proximity and the fact that defendant Dillow was merely an ancillary party to plaintiff's March 26, 2015 grievance "cut against the existence of a causal connection." (*Id.* at 15) (citing *Reynolds-Bey*, 428 F. App'x at 504). The Court agrees.

The third element of a retaliation claim requires a causal connection between the protected conduct and the adverse action—"that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeux-X*, 175 F.3d at 394. Once a prisoner can show that the defendants' adverse action was at least partially motivated by the prisoner's protected conduct, the burden shifts to the defendants to show they would have taken the same action even absent such protected conduct. *Hill*, 630 F.3d at 675. The Sixth Circuit has held that temporal proximity between protected conduct and retaliatory acts may create an inference of retaliatory motive. *Maben*, 887 F.3d at 268 (citing *King*, 680 F.3d at 695-96). However, "conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004).

In this case, plaintiff has not presented evidence establishing a causal connection between the filing of his grievance and the cell search, and the evidence of record does not demonstrate temporal proximity. The grievance that plaintiff presents as evidence was filed on April 27, 2015 and concerns a March 26, 2015 alleged incident involving Correctional Officer Lute and defendant Dillow. (Doc. 27-1). Defendants did not conduct the alleged retaliatory cell search until September 3, 2015. Plaintiff's filing of the grievance nearly five months prior to the allegedly retaliatory conduct is simply too remote in time to establish the third element of a

retaliation claim. *Vaughn v. Robb*, No. 1:11-cv-323, 2012 WL 769481, at *4 (W.D. Mich. Feb. 17, 2012), *adopted*, 2012 WL 772453 (W.D. Mich. Mar. 8, 2012) (citing cases where even three weeks between the protected conduct and alleged adverse action was too remote in time to establish a causal connection for a claim of retaliation). Moreover, the Sixth Circuit has directed courts to look at the "totality of the circumstances to determine whether an inference of retaliatory motive can be drawn." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 401 (6th Cir. 2010). Here, the lack of temporal proximity, coupled with other circumstances demonstrates that there is no causal connection between plaintiff's filing of the grievance and the cell search. For example, defendant Dillow was only an ancillary party to the March 2015 grievance. (Doc. 32-4 at 3). Defendant Clere was not mentioned. (*Id.*). In addition, defendant Dillow was assigned to plaintiff's range on a daily basis. (Dillow Declaration at ¶ 8). Given the lack of temporal proximity and the totality of the circumstances, plaintiff has failed to establish a genuine issue of fact as to whether his March 2015 grievance motivated defendant Dillow's cell search in September 2015. Accordingly, because plaintiff has failed to demonstrate a causal connection, summary judgment should be granted in favor of defendants on plaintiff's First Amendment retaliation claim.

## IV. Conclusion

Based on the foregoing, it is **RECOMMENDED** that:

1. Plaintiff's motion to amend (Doc. 36) be **GRANTED**.

2. Plaintiff's motion for summary judgment (Doc. 27) be **DENIED**.

3. Defendants' motion for summary judgment (Doc. 32) be **GRANTED**[3].

---

[3] The Court need not reach defendants' arguments that they would have taken the same action in the absence of the protected activity, or that they are entitled to qualified immunity. (Doc. 32 at 17-21). Because the evidence establishes that defendants did not engage in retaliatory conduct, summary judgment should be granted in favor of defendants.

Date: 8/10/18

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

JERONE MCDOUGALD,
    Plaintiff,

vs.

SGT. MICHAEL DILLOW, et al.,
    Defendants.

Case No: 1:17-cv-196
Barrett, J.
Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).